UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:24-cv-02221-JAK (MARx) | Date | August 19, 2025 |
| Title | FNS, Inc. v. Proactive Supply Chain Group USA, Inc., et al. | | |

---

Present: The Honorable    JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE

| Daniel Torrez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiff: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:**  **(IN CHAMBERS) ORDER RE FNS, INC.'S MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT ACE LOGISTICS INC. (DKT. 56)**

## I.     Introduction

On March 19, 2024, FNS, Inc. ("Plaintiff" or "FNS") brough this action against Proactive Supply Chain Group USA INC., "Proactive Group USA Inc.," "Proactive Specialized Logistics USA," ("Proactive"), ACE Logistics, Inc. ("Ace Logistics"), and Does 1–10 (collectively, the "Defendants"). Dkt. 1. The Complaint advances two causes of action: (1) Carmack Amendment liability; and (2) Negligence. Dkt. 1 ¶¶ 8–23. In its answer, filed on April 26, 2024, Proactive filed a crossclaim against Ace Logistics asserting implied indemnity by law, breach of contract/implied contractual indemnity, breach of contract/express indemnity, equitable indemnity. Dkt. 17 ¶¶ 40–70.

On June 10, 2024, Proactive filed a Proof of Service indicating that Ace Logistics was served with the Summons and Crossclaim on June 1, 2024. Dkt. 28. Ace Logistics did not appear in this action, and on July 5, 2024, default as to the crossclaim was entered. Dkt. 32. On May 20, 2024, FNS requested that the deadline to file a motion for default judgment be continued until a single judgment could be entered on both the crossclaim and the Complaint pursuant to the single judgment rule. Dkt. 26. On May 22, 2024, an Order issued granting this request. Dkt. 27.

On May 13, 2025, FNS and Proactive filed a joint report stating that the two parties had finalized a settlement agreement, which had been signed. Dkt. 51. On June 11, 2025, FNS and Proactive filed a stipulation to dismiss Proactive and Does 1 through 10. Dkt. 53. On June 12, 2025, an Order issued approving the stipulation. Dkt. 55.

On June 16, 2025, Proactive filed a Motion for Entry of Default Judgment by Court ("Motion" (Dkt. 56)). On June 30, 2025, in compliance with the Court's June 24, 2025 Order (Dkt. 57), Proactive filed a supplemental brief and accompanying exhibits. Dkt. 58.

In accordance with Local Rule 7-15, a determination was made that the Motion could be decided without oral argument, and it was taken under submission. Dkt. 57. For the reasons stated in this Order, the Motion is **GRANTED**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:24-cv-02221-JAK (MARx) | Date | August 19, 2025 |
| Title | FNS, Inc. v. Proactive Supply Chain Group USA, Inc., et al. | | |

## II.   Factual Background

### A.   The Parties

It is alleged that Proactive is a Texas corporation. Dkt. 17 ¶ 28.

It is alleged that Ace Logistics is a Virginia corporation whose principal place of business is in Hampton, Virginia. *Id.* ¶ 29.

### B.   Allegations in the Crossclaim

It is alleged that, in the Complaint, Plaintiff contends that container no. TRIU8796031 ("Subject Shipment"), worth $415.059.12, was lost in transit from Wilmington, California, to Orion Township, Michigan. Dkt. 17 ¶ 30. It is alleged that, on or about January 2, 2023, Ace Logistics and Proactive entered into a Broker-Carrier Agreement ("Agreement"). *Id.* ¶ 31.

It is alleged that around February 1, 2023, Proactive brokered container the Subject Shipment, which contained 42 lithium ion batteries, to be picked up by Ace from Long Beach, California, and delivered to a warehouse in Orion Township, Michigan by February 6, 2023. *Id.* ¶ 32. It is alleged that Proactive paid $4200 to Ace for the Subject Shipment. *Id.*

It is alleged that Section 6 of the Agreement stated that Ace Logistics agreed to "perform the transportation services itself and shall not re-broker, co-broker, assign, interline, subcontract or transfer the transportation of the shipment to another entity." *Id.* ¶ 35. It is alleged that Ace Logistics contracted the Subject Shipment to an unknown and disclosed third party to move the Subject Shipment. *Id.* ¶ 33. It is alleged that the third party was later determined to be Vozago LLC. *Id.*

It is alleged that the Subject Shipment was lost or stolen while in the possession of Vozago LLC. *Id.* ¶ 34. It is alleged that under Section 6 of the Agreement, Ace logistics agreed to be "liable to Broker's customer for any loss, damage or delay to Broker's customer's goods incurred during transportation services based on the 'actual loss' . . . and indemnify Broker as to any such loss, damage, or delay on the same basis." *Id.* ¶ 36. It is further alleged that, pursuant to Section 13 of the Agreement, Ace Logistics agreed to "defend, indemnify and hold harmless Broker and Broker's customers . . . against any and all claims, demands, actions, causes of action, and/or liabilities . . . on account of . . . (b) loss, damage or delay in transit as to all goods which Carrier receives through Broker for transport according to Rate Confirmation Sheet." *Id.* ¶ 37.

It is alleged that, on or about March 3, 2023, Proactive was informed by FNS that the Subject Shipment never arrived in Michigan. *Id.* ¶ 38.

### C.   Remedies Sought

The Crossclaim seeks an award to Proactive of a payment by Ace Logistics to reimburse Proactive for any payment by Proactive to FNS based on the claims advanced in the Complaint. The Crossclaim also recognizes that one potential outcome is that there may be a determination of comparative fault between Proactive and Ace with respect to the claims alleged in the Complaint, with Ace responsible

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:24-cv-02221-JAK (MARx) | Date | August 19, 2025 |
| Title | FNS, Inc. v. Proactive Supply Chain Group USA, Inc., et al. | | |

for paying its share of any judgment in accordance with its degree of fault. Dkt. 17 at 12.

### III.   Analysis

#### A.   Service of Process

##### 1.   Legal Standards

As part of evaluating a motion for the entry of a default judgment, it must be determined whether there was sufficient service of process on the party against whom default judgment is requested. *See Mason v. Genisco Tech. Corp.*, 960 F.2d 849, 851 (9th Cir. 1992). If service was not properly effected, it is unnecessary to determine whether there is personal jurisdiction over the defendant who is the subject of the motion for the entry of default judgment. *See Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987) ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."); *see also Swanson Painting Co. v. Painters Local Union No. 260*, 391 F.2d 523, 524 (9th Cir. 1968) ("In the case of a party outside the state where the district court is located, ... there are two requisites to the acquiring of personal jurisdiction. The first is the obtaining of effective service of process. The second is existence of sufficient contacts between the party and the forum state so that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.").

"[S]ervice of process in a federal action is covered generally by Rule 4 of the Federal Rules of Civil Procedure." *Omni Cap. Int'l, Ltd.*, 484 U.S. at 104. To comply with the standards of Rule 4, service must also meet the constitutional standards of due process. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1016 (9th Cir. 2002). Thus, the method of service must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

##### 2.   Application

Service upon a corporation is governed by Federal Rule of Civil Procedure 4(h), which provides, in relevant part:

> Unless federal law provides otherwise or the defendant's waiver has been filed, a domestic or foreign corporation . . . that is subject to suit under a common name, must be served:
>
> (1) in a judicial district of the United States:
>
>> (A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or
>>
>> (B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant . . .

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-02221-JAK (MARx) | Date | August 19, 2025 |
|---|---|---|---|
| Title | FNS, Inc. v. Proactive Supply Chain Group USA, Inc., et al. | | |

*See* Fed. R. Civ. P. 4(h)(1).

Pursuant to 49 U.S.C. § 13304(a):

> A motor carrier or broker providing transportation subject to jurisdiction under chapter 135,
> including a motor carrier or broker operating within the United States while providing
> transportation between places in a foreign country or between a place in one foreign country
> and a place in another foreign country, shall designate an agent in each State in which it
> operates by name and post office address on whom process issued by a court with subject
> matter jurisdiction may be served in an action brought against that carrier or broker. The
> designation shall be in writing and filed with the Department of Transportation and each State in
> which the carrier operates may require that an additional designation be filed with it. If a
> designation under this subsection is not made, service may be made on any agent of the carrier
> or broker within that State.

To satisfy this requirement, a motor carrier may file a Federal Motor Carrier Safety Administration's
("FMCSA") Form BOC-3.

Proactive's service of process complied with 49 U.S.C. § 13304(a), and therefore, with Rule 4(h).
Alexandra Rogoff-Green, counsel for Proactive, has submitted a declaration in support of Proactive's
service of process. She declares that Ace Logistics is an interstate motor carrier licensed by the U.S.
Department of Transportation under US DOT number 3915078. Dkt. 58-1 ¶ 8. She declares that #1 A+
Agents of Process Inc. is listed as the registered agent for Ace Logistics in all 50 states. *Id.* ¶ 9. She
declares that On Call Legal, Inc. is Ace Logistics' agent for service of process in California. *Id.* ¶ 10. #1
A+ Agents of Process Inc. maintains a list on file with the FMCSA that identifies a process agent for
each of the 50 states. It shows that a review of the U.S. Department of Transportation Federal Motor
Carrier Safety Administration Licensing and Insurance Public website demonstrates that Ace Logistics
Inc has a USDOT number of 3925078 and a docket number of MC-1453042. https://li-
public.fmcsa.dot.gov/LIVIEW/pkg_carrquery.prc_getdetail. It also shows that its blanket company is #1
A+ AGENTS OF PROCESS, INC. *Id.* The process agent for #1 A+ Agents of Process in California is
On Call Legal, Inc. at 2476 Overland Ave, 3rd Floor, Los Angeles, CA 90064.
https://www.fmcsa.dot.gov/registration/process-agents/pa?field_associated_boc_target_id=58136.

On June 10, 2024, Proactive filed a Proof of Service as to Ace Logistics with respect to the summons
and crossclaim. Dkt. 28. The Proof of Service states that on June 5, 2024, process server Brian Fecher
served Shana S. a "receptionist" who is "designated by law to accept service on behalf of Ace
Logistics." *Id.* It states that Sheina L. "who is designated by law to accept service of process on behalf
of" Ace Logistics was served at 2476 Overland Avenue, 3rd Floor, Los Angeles, CA 90064. *Id.*

Service of process on Ace Logistics also comported with due process because service on a registered
agent is "reasonably calculated to provide notice and an opportunity to respond." *Mullane*, 399 U.S. at
314.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:24-cv-02221-JAK (MARx) | Date | August 19, 2025 |
| Title | FNS, Inc. v. Proactive Supply Chain Group USA, Inc., et al. | | |

> B. Jurisdiction

>> 1. Legal Standards

"When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties . . . To avoid entering a default judgment that can later be successfully attacked as void, a court should determine whether it has the power, i.e., the jurisdiction, to enter the judgment in the first place." *In re Tuli,* 172 F.3d 707, 712 (9th Cir. 1999).

>> 2. Application

"An exercise of personal jurisdiction in federal court must comport with both the applicable state's long-arm statute and the federal Due Process Clause." *Burri L. PA v. Skurla*, 35 F.4th 1207, 1212 (9th Cir. 2022) (citing *Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1404–05 (9th Cir. 1994)). Because California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the federal Constitution, the jurisdictional analysis is the same under state and federal law. *Impossible Foods Inc. v. Impossible X LLC*, 80 F.4th 1079, 1086 (9th Cir. 2023); *see* Cal. Code Civ. Proc. § 410.10 ("A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States.").

Due process requires that a non-resident defendant "have certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *Int'l Shoe Co. v. Wash.,* 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463 (1940)). This focused inquiry has led to the recognition of two kinds of personal jurisdiction: general and specific. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021). A court may exercise general jurisdiction "only when a defendant is 'essentially at home' in the State." *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "[S]pecific jurisdiction 'covers defendants less intimately connected with a State, but only as to a narrower class of claims.'" *Impossible* Foods, 80 F.4th at 1086 (quoting *Ford Motor Co.*, 592 U.S. at 359). Courts employ the following three-part test to assess whether a defendant has sufficient contacts with the forum state to be subject to specific personal jurisdiction:

> (1) the defendant must either purposefully direct his activities toward the forum or purposefully avail himself of the privileges of conducting activities in the forum;

> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Impossible Foods Inc.*, 80 F.4th at 1086 (quoting *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017)).

"'The plaintiff bears the burden on the first two prongs,' but once both are established, 'the defendant

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-02221-JAK (MARx) | Date | August 19, 2025 |
|---|---|---|---|
| Title | FNS, Inc. v. Proactive Supply Chain Group USA, Inc., et al. | | |

must come forward with a compelling case that the exercise of jurisdiction would not be reasonable."
*Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 979 (9th Cir. 2021) (quoting *Boschetto v. Hansing*, 539
F.3d 1011, 1016 (9th Cir. 2008)). Further, "[w]hen a plaintiff relies on specific jurisdiction, he must
establish that jurisdiction is proper for 'each claim asserted against a defendant.'" *Picot v. Weston*, 780
F.3d 1206, 1211 (9th Cir. 2015) (quoting *Action Embroidery Corp. v. Atl. Embroidery, Inc.,* 368 F.3d
1174, 1180 (9th Cir. 2004)).

Proactive contends that there is specific personal jurisdiction over Ace Logistics. Dkt. 58 at 2–4. As to
the first requirement, Proactive contends that Ace Logistics has purposefully availed California because
Ace Logistics contracted to pick up the Shipment in California and engaged in interstate commerce
through California. Dkt. 58 at 3. As to the second requirement, FNS contends that this action relates to
the activities of Ace Logistics in California. These include picking up the shipment in California and then
losing it. Dkt. 58 at 4. This argument is persuasive. Accordingly, it is proper to exercise personal
jurisdiction over Ace Logistics.

Original jurisdiction may be established through federal question jurisdiction or diversity jurisdiction. 28
U.S.C. §§ 1331, 1332. Federal question jurisdiction is present "when a federal question is presented on
the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392
(1987); *see also* 28 U.S.C. § 1331. There is original jurisdiction over this action under 28 U.S.C.
§§ 1331, 1337. "The district courts shall have original jurisdiction . . . of an action brought under
section . . . 14706 of title 49, [commonly referred to as the "Carmack Amendment,"] only if the matter in
controversy for each receipt or bill of lading exceeds $10,000, exclusive of interests and costs." 28
U.S.C. § 1337(a).

 In the Complaint, the first claim is for liability under the Carmack Amendment and seeks damages of
$421,209.12 plus interest thereon at the maximum lawful rate from February 1, 2023 Dkt. 1 ¶¶ 8–19; *id.*
at 5. There is supplemental jurisdiction over the Crossclaim because it is plainly related to the
Complaint. Thus, the two are part of the same case or controversy. Dkt. 17 ¶ 26. When a district court
has original jurisdiction over a case, there may be supplemental jurisdiction over factually related state
claims. *See* 28 U.S.C. § 1367(a) ("the district courts shall have supplemental jurisdiction over all other
claims that are so related to claims in the action within such original jurisdiction that they form part of
the same case or controversy"). Because the Crossclaim arises out of the loss of the Subject Shipment,
which is the subject of the Complaint, there is supplemental jurisdiction.

     C.     Procedural Requirements of Default Judgment

         1.     Legal Standards

Local Rule 55-1 requires that a party moving for default judgment submit a declaration or include
information with respect to each of the following: (a) when and against which party default has been
entered; (b) the identification of the pleading to which default has been entered; (c) whether the
defaulting party is an infant or incompetent person, and if so, whether that person is represented by a
general guardian, committee, conservator or other representative; (d) that the Servicemembers Civil
Relief Act, 50 U.S.C. App. § 521 does not apply; and (e) notice has been provided to the defaulting
party, if required by Fed. R. Civ. P. 55(b)(2). Service of a motion for default judgment is required only if
the non-moving party has appeared in the action. Fed. R. Civ. P. 55(b)(2) ("If the party against whom a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:24-cv-02221-JAK (MARx) | Date | August 19, 2025 |
| Title | FNS, Inc. v. Proactive Supply Chain Group USA, Inc., et al. | | |

default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing.").

        2.       <u>Application</u>

Proactive has satisfied the procedural requirements of Local Rule 55-1. Default against Ace Logistics was entered on July 5, 2024. Dkt. 32. In support of the Motion, Proactive's counsel, Alexandra Rogoff-Green, submitted a declaration stating the following: (1) Defendant is neither incompetent nor an infant and (2) the Servicemembers' Civil Relief Act does not apply. Dkt. 56-1 ¶ 6. Notice of the Motion is not required by Fed. R. Civ. P. 55(b)(2) because Defendant has not appeared in this action either directly or through a representative. Accordingly, the procedural requirements of Local Rule 55-1 have been satisfied.

        D.       Substantive Requirements of Default Judgment

        1.       <u>Legal Standards</u>

Fed. R. Civ. P. 55(b) grants discretion to the trial court with respect to whether a default judgment should be entered. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The entry of default does not per se warrant or require the entry of a default judgment. *Id.* The Ninth Circuit has established seven factors that may be applied in determining whether a default judgment is appropriate. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). They are: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy favoring decisions on the merits. *Id.* "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) (internal citations omitted).

        2.       Application

        a)       The Possibility of Prejudice

A plaintiff is prejudiced if, absent the entry of a judgment, he will be left without a remedy. *See Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003) ("Plaintiff would suffer prejudice if the default judgment is not entered because Plaintiff would be without other recourse for recovery."); *PepsiCo v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery."); *Sunteck Transp. Co., LLC v. Domestic Carrier, Inc.*, 2022 WL 17348190, at *3 (C.D. Cal. Sept. 19, 2022) ("A plaintiff suffers prejudice if there is no recourse for recovery absent default judgment.").

Proactive will be prejudiced if default judgment is not entered because Ace Logistics has failed to participate in the litigation. Absent entry of a default judgment, Proactive has no other means to obtain relief for indemnity and damages it is entitled to following its settlement with Plaintiff. Dkt. 56 at 7. Ace Logistics's unwillingness to participate in litigation will result in Proactive being without a remedy absent

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:24-cv-02221-JAK (MARx) | Date | August 19, 2025 |
| Title | FNS, Inc. v. Proactive Supply Chain Group USA, Inc., et al. | | |

the entry of a default judgment. *Wells Fargo Bank v. Darmont Constr. Corp.*, No. 220CV10013-VAP-PDx, 2021 WL 5862170, at *2 (C.D. Cal. July 29, 2021) Accordingly, the first *Eitel* factor weighs in favor of granting the Motion.

> b)      The Merits of Proactive's Substantive Claim and the Sufficiency of the Crossclaim

The second and third *Eitel* factors overlap because a plaintiff must properly state a claim and the allegations in the complaint are deemed true. Thus, if the complaint is sufficient, a plaintiff's substantive claim has merit for purposes of a request for the entry of a default judgment. *PepsiCo*, 238 F. Supp. 2d at 1175; *see also Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978) (explaining that allegations in the complaint must state a claim upon which the plaintiff may recover).

The Crossclaim advances four crossclaims: (1) implied indemnity by law, (2) breach of contract/implied contractual indemnity, (3) breach of contract/express indemnity, and in the alternative, (4) equitable indemnity. Dkt. 17 ¶¶ 40–70.

> (1)      Breach of Contract/Express Indemnity

Under California law, the elements of a claim for breach of contract are: "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1388 (1990). "This requires plaintiff to plead the specific terms of the contract or the contract's legal effect." *A.B. Concrete Coating Inc. v. Wells Fargo Bank, N.A.*, 491 F. Supp. 3d 727, 735 (E.D. Cal. 2020).

The obligation of indemnity "may arise by virtue of express contractual language." C.*L. Peck Contractors v. Superior Court*, 159 Cal. App. 3d 828, 833 (1984). The rules governing express contractual indemnity clauses permit great "freedom of action to the parties in the establishment of the indemnity arrangement while at the same time subjecting the resulting contractual language to the established rules of construction." *Id.* An express indemnity clause has a "preemptive effect, displacing any implied rights which might otherwise arise within the scope of its operation." *Id.* at 834; *Wells Fargo Bank v. Darmont Constr. Corp.*, No. 2:20-CV-10013-VAP-PDx, 2021 WL 5862170, at *3 (C.D. Cal. July 29, 2021).

Proactive has alleged the existence of a contract with Ace Logistics, and submitted a copy of it. *See* Dkt. 56-3, Ex. A. Proactive has alleged its performance by paying $4200 to Ace Logistics to move the Subject Shipment. Dkt. 17 ¶ 32. Proactive has filed proof of payment. *See* Dkt. 17-2.

Proactive has alleged that Ace Logistics breached the contract by subcontracting the movement of the Subject Shipment. It is alleged that Section 6 of the Agreement between Ace Logistics and Proactive stated that Ace Logistics agreed to "perform the transportation services itself and shall not re-broker, co-broker, assign, interline, subcontract or transfer the transportation of the shipment to another entity." *Id.* ¶ 35. It is alleged that Ace Logistics improperly contracted the Subject Shipment to an unknown and disclosed third party to actually move the Subject Shipment. *Id.* ¶ 33. It is alleged that the third party was later determined to be Vozago LLC. *Id.* It is alleged that the Subject Shipment was lost or stolen while in the possession of Vozago LLC. *Id.* ¶ 33–34.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-02221-JAK (MARx) | Date | August 19, 2025 |
|---|---|---|---|
| Title | FNS, Inc. v. Proactive Supply Chain Group USA, Inc., et al. | | |

It is then alleged that Ace Logistics has breached the contract by failing to indemnify Proactive. It is alleged that under Section 6 of the Agreement, Ace Logistics agreed to be "liable to Broker's customer for any loss, damage or delay to Broker's customer's goods incurred during transportation services based on the 'actual loss' . . . and indemnify Broker as to any such loss, damage, or delay on the same basis." *Id.* ¶ 36. It is further alleged that pursuant to Section 13 of the Agreement, Ace Logistics agreed to "defend, indemnify and hold harmless Broker and Broker's customers . . . against any and all claims, demands, actions, causes of action, and/or liabilities . . . on account of . . . (b) loss, damage or delay in transit as to all goods which Carrier receives through Broker for transport according to Rate Confirmation Sheet." *Id.* ¶ 37. It is alleged that the Subject shipment was not delivered and the damages Proactive incurred from non-delivery were caused by Ace Logistics. Dkt. 17 ¶ 60. It is alleged that Ace Logistics failure to defend, indemnity, hold harmless, or insure Proactive was a breach of contract and express obligations. Dkt. 17 ¶¶ 61–63.

As to damages, Proactive has alleged and provided evidence that it paid FNS $280,000 in a settlement amount. Dkt. 56-2 ¶ 8. Proof of payment has been submitted. Dkt. 56-4.

For these reasons, Proactive has sufficiently alleged a claim for breach of contract/express indemnity.

(2)     Other causes of action

Because breach of contract/express indemnity is sufficiently alleged, it is unnecessary to determine whether the other causes of action, which are all based on implied duties, are sufficiently alleged.

\*               \*               \*

Because Proactive has sufficiently alleged a claim for breach of contract/express indemnity. Therefore, the second and third *Eitel* factors weigh in favor of granting the Motion.

c)     The Sum of Money at Stake in the Action

Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo*, 238 F. Supp. 2d at 1176. This factor requires that "the court assesses whether the recovery sought is proportional to the harm caused by defendant's conduct." *Landstar Ranger Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 921 (C.D. Cal. 2010). Default judgment is discouraged when the amount of money at stake in the litigation is "too large or unreasonable in light of defendant's actions." *Truong Giang Corp. v. Twinstar Tea Corp.*, No. C 06-03594-JSW, 2007 WL 1545173, at \*12 (N.D. Cal. May 29, 2007); *see also Eitel*, 782 F.2d at 1472 (finding that, in light of the parties' dispute as to material facts, entry of $3 million judgment would not be appropriate). However, where the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate. *See Board of Trs. of the Sheet Metal Workers Health Care Plan v. Superhall Mech., Inc.*, No. 10-2212, 2011 WL 2600898-EMC, at \*3 (N.D. Cal. June 30, 2011) (the amount of unpaid contributions, liquidated damages, and attorney's fees were appropriate because each was supported by sufficient evidence); *Fubon Insurance Co. v. Cherry Trucking Inc.*, No. 8:18-cv-00501-JLA-JEM, 2019 WL 2949037, at \*3 (C.D. Cal. Mar., 26, 2019) (seeking default judgment for invoice value of cargo at $244,800 was proportionate to the harm).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-02221-JAK (MARx) | Date | August 19, 2025 |
|---|---|---|---|
| Title | FNS, Inc. v. Proactive Supply Chain Group USA, Inc., et al. | | |

The Crossclaim seeks the amount of any recovery by FNS against Proactive, as well as costs and expenses. Dkt. 17 at 11–12. Through the Motion, Proactive seeks $280,000 in damages for breach of contract and indemnity. Dkt. 56-5 at 2. It also seeks $9200 in attorney's fees, and $3528.77 in prejudgment interest. *Id.*

In the Complaint, it is alleged that FNS received a claim from its customer in the sum of $509,282.17 for the value of the shipment and related fees and monetary losses. Dkt. 1 ¶ 15. FNS paid this amount. Dkt. 54 at 5. Proactive has alleged and provided evidence that, due to this loss, it paid FNS $280,000 in a settlement of the claims asserted in the Complaint. Dkt. 56-2 ¶ 8; Dkt. 56-4.

The amount of damages is sufficiently tailored to the harm that Ace Logistics caused. Accordingly, the fourth *Eitel* factor weighs in favor of granting the Motion.

> d)        The Possibility of a Dispute Concerning Material Facts

Upon entry of default, all facts pleaded in the complaint are taken as true, except those relating to damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). Further, "[w]here a plaintiff has filed a well-pleaded complaint, the possibility of dispute concerning material facts is remote." *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1082 (C.D. Cal. Jan. 23, 2012).

Although it is possible that Ace Logistics could dispute some or all of the material facts in the course of this litigation, its failure to appear and defend is sufficient to support the inference that it is unlikely to do so. *See Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1082 (C.D. Cal. Jan. 23, 2012). Further, as noted, Proactive has submitted its agreement with Ace Logistics (Dkt. 56-3), proof of payment of $4200 to Ace Logistics (Dkt. 17-2), and proof of the settlement amount of $280,000 to FNS (Dkt. 56-4). "'Since [plaintiff] has supported its claims with ample evidence, and defendant has made no attempt to challenge the accuracy of the allegations in the complaint, no factual disputes exist that preclude the entry of default judgment.'" *MSIG Mingtai Ins. Co, Ltd. v. In-Depth Transp. Inc.*, No. 2:24-cv-8689-JLS-KES, 2025 WL 2078239, at *4 (C.D. Cal. June 30, 2025) (quoting *Landstar Ranger*, 725 F. Supp. 2d at 922). Accordingly, the fifth *Eitel* factor weighs in favor of granting the Motion.

> e)        Whether Default was Due to Excusable Neglect

The sixth *Eitel* factor considers the possibility that the default resulted from excusable neglect of the non-moving party. Excusable neglect is "an equitable concept that takes account of factors such as prejudice, the length of delay and impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Franchise Holding II, LLC v. Huntington Rests. Grp.*, Inc., 375 F.3d 922, 927 (9th Cir. 2004) (internal quotation marks omitted).

"There is little possibility of excusable neglect when the plaintiff properly serves the defendant and the defendant is aware of the litigation." *Sunteck Transp. Co., LLC*, 2022 WL 17348190, at *4. The record demonstrates Ace Logistics has actual notice of this action because the Crossclaim was served on Ace Logistics. Dkt. 28. There has been no showing that Ace Logistics' failure to participate in this litigation was the result of excusable neglect. These allegations demonstrate that Ace Logistics had notice of these proceedings but chose not to participate. Therefore, the sixth *Eitel* factor weighs in favor of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:24-cv-02221-JAK (MARx) | Date | August 19, 2025 |
| Title | FNS, Inc. v. Proactive Supply Chain Group USA, Inc., et al. | | |

granting default judgment.

         f)      The Strong Policy Favoring Decisions on the Merits

The final *Eitel* factor considers the strong policy preference of deciding claims on the merits. This factor generally disfavors the entry of default judgment. *Eitel*, 782 F.2d at 1472 ("[D]efault judgments are ordinarily disfavored. Cases should be decided upon their merits whenever reasonably possible.") "However, the mere existence of Fed. R. Civ. P. 55(b) indicates that this preference, standing alone, is not dispositive." *PepsiCo*, 238 F. Supp. 2d at 1177 (internal citation and quotation marks omitted). Therefore, although this factor weighs against granting the Motion, it does not require that result. A contrary rule would mean that a default judgment could rarely, if ever, be entered.

Ace Logistics' failure to respond to the Crossclaim "makes a decision on the merits impractical, if not impossible." *Id.* Accordingly, while it is favorable to make decisions based on the merits of the case, this favor does not preclude this Court from entering default judgment here.

               *                    *                    *

Based on a review and balancing of the *Eitel* factors, the Motion is **GRANTED** as to the liability of Ace Logistics.

        E.      Remedies Sought

A "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

As noted, the Crossclaim seeks the amount of any recovery by FNS against Proactive, as well as costs and expenses. Dkt. 17 at 11–12. Through the Motion, Proactive seeks $280,000 in damages for breach of contract and indemnity. Dkt. 56-5 at 2. It also seeks $9200 in attorneys' fees, and $3528.77 in prejudgment interest.

        1.      Damages

A "default judgment must be supported by specific allegations as to the exact amount of damages asked for in the complaint." *Philip Morris USA*, 219 F.R.D. at 499. In addition, "Plaintiff must 'prove up' the amount of damages that it is claiming." *Id.* at 501. "In determining damages, a court can rely on the declarations submitted by the plaintiff or order a full evidentiary hearing." *Id.* at 498 (citing Fed. R. Civ. P. 55(b)(2)); *see also Landstar Ranger*, 725 F. Supp. 2d at 923 (granting the plaintiff's motion for default judgment and requested damages on goods delivered where plaintiff proffered an invoice summary, copies of invoices, and underlying shipping documents which reflected the outstanding balance requested). "However, if the facts necessary to determine damages are not contained in the complaint, or are legally insufficient, they will not be established by default." *Philip Morris USA*, 219 F.R.D. at 498 (citing *Cripps v. Life Ins. Co. of N. America*, 980 F.2d 1261, 1267 (9th Cir. 1992)).

In the Complaint, it is alleged that FNS received a claim from its customer, LG Energy Solutions Michigan, Inc. ("LGES"), in the sum of $509,282.17 for the value of the shipment and related fees and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:24-cv-02221-JAK (MARx) | Date | August 19, 2025 |
| Title | FNS, Inc. v. Proactive Supply Chain Group USA, Inc., et al. | | |

monetary losses asserted by LGES. Dkt. 1 ¶ 15. FNS claims to have paid this amount. Dkt. 54 at 5. Proactive has alleged and provided evidence that it paid FNS $280,000 in a settlement amount. Dkt. 56-2 ¶ 8; Dkt. 56-4.

Therefore, an award of damages in the amount of $280,000 is appropriate.

2.      Prejudgment Interest

The Agreement does not provide for prejudgment interest.

California Civil Code § 3289 provides that if a contract does not stipulate to a legal interest rate, the obligation shall bear interest at a rate of 10 percent per annum after a breach. *See* Cal. Civ. Code § 3289(b); *Great Am. Ins. Co. v. Inland Mech. Services, Inc.*, No. 5:23-CV-01390-DSF-SHKx, 2024 WL 5369369, at *3 (C.D. Cal. Aug. 8, 2024).

Based on the Settlement Amount of $280,000, Proactive is entitled to prejudgment interest at the statutory rate of 10% per annum from May 23, 2025, the date that the Settlement Amount was paid by Proactive, to August 19, 2025, the date this Order issues and judgment is entered, for a total interest amount of $6750.48 accruing at a rate of $76.71 per day.

3.      Attorneys' Fees

The Agreement provides for an award of attorney's fees to the prevailing party in litigation. Dkt. 56-3 at 7–8. Under Local Rule 55-3, a judgment of more than $100,000 allows for recovery of $5600 in attorney's fees plus 2% of the judgment amount over $100,000, so long as a "contract . . . provides for the recovery of reasonable attorneys' fees." *Vogel v. Harbor Plaza Ctr.*, LLC, 893 F.3d 1152, 1156-57 (9th Cir. 2018). Under Local Rule 55-3, Proactive is entitled to an award of attorney's fees of $5600 plus 2% of the amount of compensatory damages exceeding $100,000, which is $3600. Therefore, attorney's fees of $9200 are awarded.

**IV.     Conclusion**

For the reasons stated in this Order, the Motion is **GRANTED**. A corresponding judgment is issued with this Order.

**IT IS SO ORDERED.**

_____  :  _____

Initials of Preparer      DT